UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

**KRISTIN R. COOK,**

                    **Plaintiff,**

v.                                                      Civil Action No. 3:13CV628

**BANK OF AMERICA, N.A.,**

**SERVE:**      **CT Corporation System, Registered Agent**
                **4701 Cox Road, Suite 301**
                **Glen Allen, VA  23060**

**EQUIFAX INFORMATION SERVICES, LLC.,**

**SERVE:**      **Corporation Service Company, Registered Agent**
                **Bank of America Center, 16th Floor**
                **1111 East Main Street**
                **Richmond, VA 23219,**

**EXPERIAN INFORMATION SOLUTIONS, INC.**

**SERVE:**      **David N. Anthony, Registered Agent**
                **Troutman Sanders, LLP**
                **1001 Haxall Point**
                **Richmond, VA 23219**

**TRANS UNION, LLC.**

**SERVE:**      **Corporation Service Company, Registered Agent**
                **Bank of America Center, 16th Floor**
                **1111 East Main Street**
                **Richmond, VA 23219,**

                **Defendants.**

<u>**COMPLAINT**</u>

COMES NOW the Plaintiff, **KRISTIN R. COOK** (hereafter the "Plaintiff"), by counsel,

and for her Complaint against the Defendants, she alleges as follows:

## PRELIMINARY STATEMENT

1.      This action is brought for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Federal Fair Credit Reporting Act (FCRA) 15 U.S.C. 1681 et. seq., and the common law tort of defamation.

2.      The Plaintiff alleges that *Bank of America* inaccurately reported the Plaintiff as having defaulted on her mortgage and otherwise having violated her obligations to her creditor. There is no objective basis for *Bank of America* to have reported this to the credit bureaus.  For all of her financial struggles over the last two years of her relationship with *Bank of America*, the Plaintiff has paid her mortgage and honored her obligations in the manner that *Bank of America* had insisted.

3.      When the Plaintiff learned that *Bank of America* had inaccurately reported her mortgage account as delinquent, and that such inaccuracies had destroyed her credit, she began the dispute process, through the national credit bureaus.  *Bank of America* then refused to investigate or correct its defamatory reporting.  In doing so, it violated the FCRA.

## JURISDICTION

4.      The jurisdiction of this Court is conferred by 15 U.S.C. §1681(p).  Venue is proper as Defendants maintain their registered offices within the boundaries for the Eastern District of Virginia, Richmond Division and significant parts of the Plaintiff's claim occurred in Virginia.

## PARTIES

5.      The Plaintiff, **KRISTIN R. COOK**, is a natural person and resident of Virginia. Plaintiff, at all times relevant hereto was a "consumer" and "person" protected by the FCRA.

6.   Upon information and belief, Defendant, **BANK OF AMERICA, N.A.**, (hereinafter "*Bank of* **America**") is a National Bank doing business as a mortgage originator, mortgage servicer and at all times relevant hereto was a "furnisher" as governed by the FCRA.

7.   Upon information and belief, **EQUIFAX INFORMATION SERVICES, LLC.** ("*Equifax*") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

8.   Upon information and belief, *Equifax* is a "consumer reporting agency", as defined in 15 U.S.C. §1681a(f).  Upon information and belief, *Equifax* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

9.   Upon information and belief, *Equifax* disburses such consumer reports to third parties under contract for monetary compensation.

10.   Upon information and belief, **EXPERIAN INFORMATION SOLUTIONS, INC.** ("*Experian*") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

11.   Upon information and belief, *Experian* is a "consumer reporting agency", as defined in 15 U.S.C. §1681a(f).  Upon information and belief, *Experian* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

12.   Upon information and belief, *Experian* disburses such consumer reports to third parties under contract for monetary compensation.

13.   Upon information and belief, **TRANS UNION, LLC.** ("*Trans Union*") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

14.     Upon information and belief, *Trans Union* is a "consumer reporting agency", as defined in 15 U.S.C. §1681a(f).  Upon information and belief, *Trans Union* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

15.     Upon information and belief, *Trans Union* disburses such consumer reports to third parties under contract for monetary compensation.

## FACTS

16.     On or about July 30, 2011 Ms. Cook received a letter from *Bank of America* that she was approved to enter into a Trial Plan under the Fannie Mae Modification Program.  The letter requested that Ms. Cook that she make new monthly Trial Period Plan Payments in place of her normal monthly mortgage payments beginning September 1, 2011 through November 1, 2011.  *Bank of America* further advised in its letter that after all of the trial period payments were timely made and her hardship was verified, her mortgage would be permanently modified.

17.     Ms. Cook did as the *Bank of America,* letter had instructed made of the required trial period plan payments.

18.     On or about December 13, 2011, Ms. Cook received a Summary of Proposed Modification and the Loan Modification Agreement.  Ms. Cook signed the Modification Agreement on December 23, 2011 and the Bank of America Representative signed the Agreement on July 27, 2012.

19.     In February 2013, Ms. Cook obtained a copy of her Tri-Merge Credit report and learned that *Equifax, Experian* and  *Trans Union* were each reporting that she had 120 days delinquent in the payment of *Bank of America* mortgage during the time that she was making payments under the Trial Plan period in 2011.

4

20.     Ms. Cook contacted *Bank of America* regarding the inaccurate reporting on her credit reports and was advised by a *Bank of America* Representative that she was not making her mortgage payments during those months and that was why it was being reporting that way, which was false.  Plaintiff was in fact making her payments as instructed.

21.     On or about March 5, 2013, Ms. Cook disputed the *Bank of America* mortgage reporting directly with *Equifax, Experian* and *Trans Union*.  Ms. Cook advised that she had made all of her payments as agreed pursuant to a trial payment plan and that her loan had been modified.  Ms. Cook included copies of her trial period payment plan, her bank transaction history and loan modification terms from *Bank of America* and bank statements supporting her dispute.

22.     On or about March 7, 2013, *Equifax* responded to Ms. Cook's dispute and advised her that *Bank of America*  had verified to *Equifax* that the mortgage account was reporting accurately.

23.     On or about March 11, 2013, *Experian* responded to Ms. Cook's dispute with it's form letter stating that *Experian* had reviewed the documentation that she had provided with her dispute, but it had determined that it was unable to use to make the changes or deletions she requested.

24.     On or about March 12, 2013, Experian forwarded its Dispute Results to Ms. Cook that advised that the *Bank of America* account would remain,  *Experian* provided no reporting information for this account with its Dispute Results.

25.     On or about March 14, 2013, *Trans Union* forwarded its Investigation Results to Ms. Cook that advised that new information had been provided from *Bank of America*. However, the mortgage account was still being reporting derogatorily as 120 days delinquent for

the months in which she was making her payments under the trial period plan as instructed by *Bank of America*, which is false.

26.     *Equifax, Experian and Trans Union* each received, but ignored Ms. Cook's disputes and did refuse to delete or correct the inaccurate information regarding the derogatory account from Ms. Cook's credit file.

27.     *Equifax, Experian and Trans Union* each had actual knowledge of these inaccuracies and deliberately chose to ignore and permit the reporting of the derogatory account.

28.     After receiving Ms. Cook's notice of the inaccuracy and since on or about March 2013, *Equifax, Experian* and *Trans Union* prepared and published to third parties multiple inaccurate consumer reports about Ms. Cook that contained the inaccurate derogatory *Bank of America* mortgage account.

29.     *Equifax, Experian and Trans Union* received Ms Cook's disputes, but in each case wholly and entirely failed to conduct the reinvestigations required by law.   Instead, *Equifax, Experian and Trans Union* merely "parroted" the information dictated to it by *Bank of America*.

30.     Upon information and belief, Ms. Cook alleges that on one or more occasions *Equifax, Experian and Trans Union* forwarded Ms. Cook's disputes to *Bank of America*. Upon information and belief, *Bank of America* was provided notice of Ms. Cook's disputes and despite this notice, failed and refused to investigate and correct its inaccurate reporting.

### COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681e(b)
### (EQUIFAX, EXPERIAN and TRANS UNION)

31.     Ms. Cook realleges and incorporates paragraphs 1 through 30 above as if fully set out herein.

32. *Equifax, Experian* and *Trans Union* each violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Cook's credit reports and credit files they published and maintained concerning Ms. Cook.

33. As a result of *Equifax, Experian* and *Trans Union's* violations of 15 U.S.C. §1681i(e)(b), Ms. Cook suffered actual damages including without limitation, by example only and as described herein on Ms. Cook's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

34. *Equifax, Experian* and *Trans Union's* conduct, actions and inactions were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *Equifax, Experian* and *Trans Union* were negligent entitling the Ms. Cook to recover under 15 U.S.C. §1681o.

35. Ms. Cook is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(1)
### (EQUIFAX, EXPERIAN and TRANS UNION)

36. Ms. Cook realleges and incorporates paragraphs 1 through 35 above as if fully set out herein.

37. *Equifax, Experian* and *Trans Union* each violated 15 U.S.C. §1681i(a)(1) on multiple occasions by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Ms. Cook's credit file.

38. As a result of *Equifax, Experian* and *Trans Union's* violations of 15 U.S.C. §1681i(a)(1), Ms. Cook suffered actual damages including without limitation, by example only and as described herein on Ms. Cook's behalf by counsel:  loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

39. *Equifax, Experian* and *Trans Union's* conduct, actions and inactions were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, *Equifax, Experian* and *Trans Union* were negligent entitling Ms. Cook to recover under 15 U.S.C. §1681o.

40. Ms. Cook is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(2)(A)
### (EQUIFAX, EXPERIAN and TRANS UNION)

41. Ms. Cook realleges and incorporates paragraphs 1 through 40 above as if fully set out herein.

42. *Equifax, Experian* and *Trans Union* each violated 15 U.S.C. §1681i(a)(2)(A) on multiple occasions by failing to provide lawful notification of Ms. Cook's dispute to *Bank of America* and by failing to include all relevant information regarding Ms. Cook's disputes.

43. As a result of *Equifax, Experian* and *Trans Union's* violations of 15 U.S.C. §1681i(a)(2)(A), Ms. Cook suffered actual damages including without limitation, by example only and as described herein on Ms. Cook's behalf by counsel:  loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

44. *Equifax, Experian* and *Trans Union's* conduct, actions and inactions were

willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, *Equifax, Experian* and *Trans Union* were negligent entitling Ms. Cook to recover under 15 U.S.C. §1681o.

45.     Ms. Cook is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. §1681i(a)(4)**
**(EQUIFAX, EXPERIAN and TRANS UNION)**

46. Ms. Cook realleges and incorporates paragraphs 1 through 45 above as if fully set out herein.

47.     *Equifax, Experian* and *Trans Union* each violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider all relevant information submitted by Ms. Cook.

48.     As a result of *Equifax, Experian* and *Trans Union's* violations of 15 U.S.C. §1681i(a)(4), Ms. Cook suffered actual damages including without limitation, by example only and as described herein on Ms. Cook's behalf by counsel:  loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

49.     *Equifax, Experian* and *Trans Union's* conduct, actions and inactions were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, *Equifax, Experian* and *Trans Union* were negligent entitling Ms. Cook to recover under 15 U.S.C. §1681o.

50.     Ms. Cook is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* in an amount to be determined by the

9

Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT FIVE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(5)(A)
### (EQUIFAX, EXPERIAN and TRANS UNION)

51.  Ms. Cook realleges and incorporates paragraphs 1 through 50 above as if fully set out herein.

52.  *Equifax, Experian* and *Trans Union* each violated 15 U.S.C. §1681i(a)(5)(A) on multiple occasions by failing to promptly delete the disputed inaccurate item of information from Ms. Cook's credit file or modify the item of information upon a lawful reinvestigation.

53.  As a result of *Equifax, Experian* and *Trans Union's* violations of 15 U.S.C. §1681i(a)(5)(A), Ms. Cook suffered actual damages including without limitation, by example only and as described herein on Ms. Cook's behalf by counsel:  loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

54.  *Equifax, Experian* and *Trans Union's* conduct, actions and inactions were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, *Equifax, Experian* and *Trans Union* were negligent entitling Ms. Cook to recover under 15 U.S.C. §1681o.

55.  Ms. Cook is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT SIX: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681s-2(b) (1)(A)
### (BANK OF AMERICA)

56.  Ms. Cook realleges and incorporates paragraphs 1 through 55 above as if fully set out herein.

57.     On one or more occasions within the two years prior to the filing of this suit, by example only and without limitation, *Bank of America* violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate Ms. Cook's disputes.

58.     When Ms. Cook mailed her disputes to the consumer reporting agencies, they use a dispute system named "e-Oscar", which has been adopted by the credit reporting agencies and their furnisher customers such as *Bank of America*. It is an automated system and the procedures used by the CRA's are systemic and uniform.

59.     When *Equifax, Experian* and *Trans Union* receive a consumer dispute, it (usually via an Indian outsource vendor), translates that dispute into an "ACDV" form.

60.     The ACDV form is the method by which *Bank of America* has elected to receive consumer disputes pursuant to 15 U.S.C. §1681i(1).

61.     It is extremely rare – certainly less than 1% of the time – that *Bank of America* will receive a consumer's dispute sent through the CRA's other than through the e-Oscar system.

62.     On information and belief, Ms. Cook alleges that to date *Bank of America* has never complained to the CRA's about the amount of information it receives regarding a consumer dispute through the e-Oscar system or through ACDVs.

63.     When *Bank of America* receives a consumer dispute ACDV form, it is aware that it may also contact the CRA that sent it to obtain more information regarding a consumer's dispute.

64.     Based on the manner in which *Equifax, Experian* and *Trans Union* responded to Ms. Cook's disputes, representing that *Bank of America* had "verified" the supposed accuracy of its reporting, Ms. Cook alleges that *Equifax, Experian* and *Trans Union* did in fact forward Ms. Cook's dispute via an ACDV to *Bank of America*.

65.     *Bank of America* understood the nature of Ms. Cook's dispute when it received the ACDV from *Equifax, Experian* and *Trans Union*.

66.     When *Bank of America* received the ACDV from *Experian, Equifax* and *Trans Union* each as well could have reviewed its own system and determined that Ms. Cook was not delinquent in the payment of her mortgage.

67.     Notwithstanding the above, *Bank of America* followed a standard and systemically unlawful process when they received the ACDV dispute. Basically, all *Bank of America* does is review their own internal computer screen for the account and repeat back to the ACDV system the same information *Bank of America* had already reported to the CRAs.

68.     When *Bank of America* receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in their computer system is itself accurate.

69.     As a result of *Bank of America's* violations of 15 U.S.C. §1681s-2(b)(1)(A), Ms. Cook suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

70.     The violations by *Bank of America* were willful, rendering *Bank of America* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

71.     The law in this District, the Fourth Circuit and even nationally has long ago been set to require a detailed and searching investigation by a creditor when it receives a consumer's FCRA dispute through a CRA.

72.     *Bank of America* was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Ms. Cook's dispute.

12

73.     *Bank of America* has been sued numerous times for its alleged failures to conduct lawful FCRA investigations.

74.     On information and belief, Ms. Cook alleges that the procedures followed regarding her FCRA disputes through e-Oscar were the procedures that *Bank of America* intended their employees or agents to follow.

75.     On information and belief, Ms. Cook alleges that *Bank of America*'s employees or agents did not make a mistake (in the way in which he or she followed *Bank of America*'s procedures) when he or she received, processed and responded to the *Equifax, Experian* and *Trans Union* ACDVs.

76.     On information and belief, Ms. Cook alleges that *Bank of America* has not materially changed its FCRA investigation procedures after learning of their failures in this case.

77.     In the alternative, *Bank of America* was negligent, which entitles Ms. Cook to recovery under 15 U.S.C. §1681o.

78.     Ms. Cook is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Bank of America* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT SEVEN: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681s-2(b)(1)(B)
## (BANK OF AMERICA)

79.     Ms. Cook realleges and incorporates all other factual allegations set forth in the Complaint (Particularly though not limited to as pled in the "Fact" section of the Complaint and the previous Count).

80.     On one or more occasions within the past two years, by example only and without limitation *Bank of America* violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all

relevant information provided by the consumer reporting agencies.

81.     As Ms. Cook detailed in Count Six, ***Bank of America*** has elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

82.     ***Bank of America*** is aware of the meaning of the several dispute codes used by the CRAs in e-Oscar

83.     ***Bank of America*** does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

84.     As a result of ***Bank of America's*** violations of 15 U.S.C. §1681s-2(b)(1)(B), Ms. Cook suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

85.     The violations by ***Bank of America*** were willful, rendering ***Bank of America*** liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, ***Bank of America*** was negligent, which entitles Ms. Cook to recovery under 15 U.S.C. §1681o.

86.     Ms. Cook is entitled to recover actual damages, statutory damages, costs and attorney's fees from ***Bank of America*** in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT EIGHT: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681s-2(b) (1)(C) and (D)
## (BANK OF AMERICA)

87.     Ms. Cook realleges and incorporates all other factual allegations set forth in the Complaint. (Particularly though not limited to as pled in the "Fact" section of the Complaint and the previous two Counts).

88.     On one or more occasions within the past two years, by example only and without

limitation, *Bank of America* violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the Bank *of America* representations within Ms. Cook's credit files with the CRAs without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

89. Specifically, *Bank of America* failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to *Experian, Equifax* and *Trans Union*.

90. On information and belief, Ms. Cook alleges that *Bank of America* rarely if ever adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

91. Ms. Cook's dispute was, at a minimum, bone fide.

92. As a result of *Bank of America's* violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), Ms. Cook suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

93. The violations by *Bank of America* were willful, rendering *Bank of America* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

94. *Bank of America* was aware of the *Saunders v. B.B.&T* FCRA decision by the Fourth Circuit when they followed the ACDV procedures used regarding Ms. Cook's dispute.

95. *Bank of America* has been sued multiple times for its alleged failures to note their accounts as disputed when responding to a FCRA disputes.

96. On information and belief, the Ms. Cook alleges that the procedures followed regarding Ms. Cook's FCRA disputes through e-Oscar were the procedures that *Bank of*

*America* intended their employees or agents to follow.

97. On information and belief, the Ms. Cook alleges that *Bank of America*'s employees or agents did not make a mistake (in the way in which he or she followed *Bank of America*'s procedures) when he or she received, processed and responded to the *Experian, Equifax* and *Trans Union's* ACDVs and did not include the XB code in the CCC field.

98. On information and belief, Ms. Cook alleges that *Bank of America* has not materially changed their FCRA investigation procedures regarding the CCC field in ACDVs after learning of their failures in this case.

99. In the alternative, *Bank of America* were negligent, which entitles Ms. Cook to recovery under 15 U.S.C. §1681o.

100. Ms. Cook is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Bank of America* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT NINE: DEFAMATION
## (BANK OF AMERICA)

101. Ms. Cook repeats and re-alleges every allegation above as if set forth herein in full.

102. Within the context of the allegations in Count Nine, *Bank of America* did not act as a consumer reporting agency nor a user of Ms. Cook's consumer report. *Bank of America* did not use her consumer report or take adverse action based on the report.

103. In addition to its violations of the Fair Credit Reporting Act, *Bank of America* made multiple false and defamatory statements that are not governed by 15 U.S.C. §1681s-2. *Bank of America* published the false statements that Ms. Cook was past due on her mortgage obligation to the credit reporting agencies and through the credit reporting agencies to all of Ms.

16

Cook's potential lenders on multiple occasions.

104.   These false and defamatory statements were made with legal malice and a wilful intent to injure Ms. Cook by placing derogatory information on her credit reports. *Bank of America* had reason to know, both by virtue of information communicated to it by Ms. Cook and by its own records, that Ms. Cook had not refused to pay her obligation and that she was fully in compliance therewith. Further, *Bank of America* wilfully adopted procedures that wholly ignored the demands of Ms. Cook, and other consumers generally, that inaccurate information should be removed from their credit files.

105.   As a result of *Bank of America*'s conduct, actions and inaction, Ms. Cook suffered various types of damage as set forth herein, including specifically, loss of credit, the loss of the ability to purchase and benefit from a line of credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.

106.   These defamations were malicious, wilful, deliberate, intentional and/or with reckless disregard for the interests and rights of Ms. Cook, so as to justify an award of punitive damages against *Bank of America* in an amount to be determined by the Court.

WHEREFORE Ms. Cook demands judgment for compensatory and statutory damages against the Defendants, jointly and severally; for her attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED**.

KRISTIN R. COOK

By: _____
                    Of Counsel

LEONARD A. BENNETT, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 - Facsimile
E-mail: lenbennett@clalegal.com

SUSAN M. ROTKIS, VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 - Facsimile
E-mail: srotkis@clalegal.com

*Counsel for Plaintiff*